<span style="color:red">Corrected</span>

# In the United States Court of Federal Claims

CWS FMTI JV LLC and
MAINSAIL-OASIS JOINT VENTURE LLC,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

Nos. 25-1420, 25-1551
Filed under seal: February 9, 2026
Reissued: February 24, 2026

Matthew T. Schoonover, Schoonover & Moriarty LLC, Olathe, Kansas, for plaintiffs.
Steven J. Gillingham, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Denying plaintiffs' motion for judgment on the administrative record and
granting the government's cross-motion for judgment on the administrative record**

Plaintiffs CWS FMTI and Mainsail-Oasis protest their disqualification from consideration for a contract administered by the General Services Administration (GSA).[1] Plaintiffs—both joint ventures—submitted proposals in response to a government-wide solicitation. GSA disqualified each plaintiff from consideration because each submitted only one example qualifying project from a small or historically underutilized business connected to the joint venture. The government reads its solicitation to require two such qualifying projects, and the plaintiffs read the solicitation to require only one. Plaintiffs argue that the government's interpretation of the solicitation is incorrect or at least that the terms are latently ambiguous; the government disagrees. Plaintiffs move for judgment on the administrative record and for a permanent injunction. The government cross-moves for judgment on the administrative record.

---

[1] This opinion was originally issued under seal on February 9, 2026. The parties had no proposed redactions. The court reissues the opinion publicly.

The court agrees with the government's interpretation of the solicitation, that it unambiguously requires two small-business qualifying projects, and, to the extent the solicitation could be considered ambiguous, the ambiguity is patent, requiring a protest before any award. And, although plaintiffs request a certificate of competency, the court agrees with the government that no certificate of competency was required. Thus, GSA reasonably disqualified plaintiffs' proposals from consideration, and the government is entitled to judgment on the administrative record.

## I.      Background

The Small Business Act requires the government to help small and socioeconomically disadvantaged businesses receive federal contracts. *See* 15 U.S.C. §§ 631-57. The Small Business Administration (SBA) administers a program under 15 U.S.C. §§ 636(j)(10) and 637(a), known as the section 8(a) program, to help small businesses. The Small Business Act also provides benefits for historically underutilized business zone (HUBZone) small businesses (*id.* § 657a), women-owned small businesses (WOSBs) (*id.* § 637(m)), and service-disabled veteran-owned small businesses (SDVOSBs) (*id.* § 657f), among others. For example, the government can state that only businesses participating in the 8(a) program may bid on a given solicitation. *Flexfab, LLC v. United States*, 424 F.3d 1254, 1256 (Fed. Cir. 2005). Or the government can set aside a certain number or proportion of contracts under a given solicitation for those categories of socioeconomically disadvantaged businesses. *See Adams & Associates, Inc. v. United States*, 741 F.3d 102, 110 (Fed. Cir. 2014).

In 2023, GSA solicited proposals for its One Acquisition Solution for Integrated Services Plus (OASIS+) program for contractors to supply a wide array of products and services, government wide. AR1-2.[2] The solicitation requested proposals from six categories of offerors, including

---

[2] The parties submitted an administrative record to the court and also filed a joint appendix through ECF. The court will cite the administrative record with the designation AR. Most cited pages can

the socioeconomic set-aside categories of 8(a) businesses, HUBZone businesses, WOSBs, and SDVOSBs. AR2; AR2360. An offeror could qualify as one of those socioeconomic set-aside businesses either on its own, as a joint venture, or as a joint venture that included a mentor and a protégé, with the protégé qualifying in the socioeconomic set-aside category. AR2462-63; AR4091; AR2502; AR5619; AR7157. An offeror could submit a proposal under one or more service domains—types of services the offeror was proposing to provide. An offeror was required to demonstrate its relevant experience in a domain through up to five examples of qualifying projects—projects done by the offeror or a related entity showing an ability to do the type of work the offeror was proposing to do. AR1; AR5; AR1681. A qualifying project could represent the experience of the offeror itself, a subcontractor, or, in the case of a joint venture, an individual member of the joint venture. AR2501; AR2503; AR4090; AR4092; AR5618; AR5620; AR7156; AR7158.

The solicitation included evaluation criteria and instructions, with details about the qualifying projects that an offeror needed to submit; the types of qualifying projects the solicitation required varied depending on the category of offeror. AR2490; AR4079; AR5607; AR7145.[3] Section L of the solicitation contains instructions, with different subsections instructing different categories of offerors on how to choose qualifying projects. AR2488. Section M contains evaluation factors and also includes subsections discussing qualifying-project requirements. AR2543. A proposal had to comply with both sections. AR2490.

---

be found in the joint appendix, ECF No. 38-2. For the pages not found in the joint appendix, the parties will eventually file the complete administrative record either through ECF or separately with the clerk's office. *See* Rules of the Court of Federal Claims, Appendix C, Rule 28.

[3] Because the relevant text of the solicitation is the same, regardless of which socioeconomic set-aside category is at issue, the court will generally cite only the 8(a) portion of the solicitation going forward.

Section L.5.1.3.1 of the solicitation instructs a joint venture to submit a proposal with the "elements identified in section L.5 in accordance with other sections of this solicitation <u>and</u>" certain additional elements, including, for mentor-protégé joint ventures with a socioeconomic set-aside business as the protégé, that "a minimum of one relevant qualifying project must be from the protégé or the offering mentor-protégé joint venture for each proposed domain." AR2500-01 (capitalization omitted, emphasis in original).

In section L.5.2.2, under "Qualifying Project Experience," for all offerors in the socioeconomic set-aside categories, the solicitation requires that, of the up-to-five qualifying projects, "a <u>minimum of two [qualifying projects]</u> must be from [a socioeconomic] concern for each proposed domain." AR2517-18 (capitalization omitted, emphasis in original). Section M reiterates that, "if [an] offeror chooses to claim credit for [qualifying-project] experience, the offeror must ensure all the requested proposal submission information is current, accurate, and complete in accordance with Section L.5.2." AR2548 (capitalization omitted).

CWS FMTI and Mainsail-Oasis are both mentor-protégé joint ventures that submitted proposals under socioeconomic set-aside categories. AR14704-09; AR14710-14; AR15009-13; AR11192. CWS FMTI submitted proposals under the 8(a) and HUBZone categories; Mainsail-Oasis submitted proposals under the WOSB and SDVOSB categories. AR14704-09; AR14710-14; AR15009-13. Each plaintiff submitted more than one proposal under each category, proposing to do work in different service domains, meaning each plaintiff intended to perform more than one different type of work. AR14704; AR14710. Although it is not necessary to understand this case, the court's understanding of plaintiffs' unsuccessful proposals is summarized in the table below, with set-aside categories listed on top and service domains listed along the left side. (Each plaintiff

4

also had successful proposals in the "total small business" category, and those proposals are not at issue in this bid protest.)

|  | 8(a) Business | HUBZone Business | WOSB | SDVOSB |
|---|---|---|---|---|
| **Management and Advisory** | CWS FMTI | CWS FMTI | Mainsail-Oasis | Mainsail-Oasis |
| **Technical and Engineering** | CWS FMTI | CWS FMTI | Mainsail-Oasis | Mainsail-Oasis |
| **Research and Development** | | | Mainsail-Oasis | Mainsail-Oasis |
| **Intelligence Services** | | | Mainsail-Oasis | Mainsail-Oasis |
| **Logistics** | | | Mainsail-Oasis | Mainsail-Oasis |

*Id.*

In each proposal, CWS FMTI included five qualifying projects, four of which were performed by the mentor and one of which was performed by the protégé. AR14705-09. Mainsail-Oasis similarly submitted only one qualifying project from its protégé in each proposal. AR14711-14; AR15010-13. CWS FMTI and Mainsail-Oasis each received a notification for each set-aside category that it was an unsuccessful offeror and a written debriefing from GSA. AR15322-26 (CWS FMTI 8(a)); AR15408-12 (CWS FMTI HUBZone); AR15846-50 (Mainsail-Oasis SDVOSB); AR15854-58 (Mainsail-Oasis WOSB). GSA found that each proposal failed to meet the solicitation's qualifying-project requirements because "[t]he Offeror did not submit a minimum of two Qualifying Projects from [socioeconomic] concern[s]"—8(a) businesses, HUBZone businesses, WOSBs, or SDVOSBs, as relevant—as required by section L.5.2.2 of the solicitation. AR15325 (CWS FMTI 8(a)); AR15411 (CWS FMTI HUBZone); AR15848-50 (Mainsail-Oasis SDVOSB); AR15856-58 (Mainsail-Oasis WOSB).

CWS FMTI filed a protest in this court requesting declaratory relief and a permanent injunction. ECF No. 1 at 14 [¶¶ A, C]. Mainsail-Oasis filed a related protest. *Mainsail-Oasis Joint Venture LLC v. United States*, No. 25-1551, ECF No. 1.[4] The court consolidated the cases, at the parties' request. ECF No. 21. Plaintiffs now move for judgment on the administrative record, and the government cross-moves. ECF Nos. 28-1, 32. The court held a hearing on the motions.

## II.    Discussion

This court's jurisdiction is primarily defined by the Tucker Act, which provides the court with "jurisdiction to render judgment … in connection with a procurement or proposed procurement." 28 U.S.C. § 1491(b). The court can grant "any relief that the court considers proper, including declaratory and injunctive relief." *Id*.

The court "review[s] the agency's decision pursuant to ... the standards found in the Administrative Procedure Act" (APA), 5 U.S.C. § 706. *Banknote Corporation of America, Inc. v. United States*, 365 F.3d 1345, 1350 (Fed. Cir. 2004). "Among the various APA standards of review in section 706, the proper standard to be applied in bid protest cases is provided by 5 U.S.C. § 706(2)(A): a reviewing court shall set aside the agency action if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. at 1350-51 (cleaned up).

To decide a motion for judgment on the administrative record, the court must determine whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *Palantir USG, Inc. v. United States*, 904 F.3d 980, 989 (Fed. Cir. 2018). When the parties argue about a solicitation's terms, the court must determine the meaning of those terms and determine whether the solicitation was ambiguous. *Banknote*, 365 F.3d at 1353. The correct interpretation of a solicitation is a legal issue, reviewed de novo. *Id*.

---

[4] Unless otherwise indicated, all ECF citations in this opinion refer to the docket of the lead case, No. 25-120.

Interpretation of a solicitation begins with the plain language of the solicitation. *Banknote*, 365 F.3d at 1353. The court must "consider the solicitation as a whole, interpreting it in a manner that harmonizes and gives reasonable meaning to all of its provisions" and must give provisions "their plain and ordinary meaning." *Id.* If the language of the solicitation is unambiguous, the court reviews the agency's decision, applying that language.

If the language of the solicitation is "susceptible to more than one reasonable interpretation," it is ambiguous. *Banknote*, 365 F.3d at 1354. Whether an ambiguity in solicitation language is patent or latent is a question of law. *M.R. Pittman Group, LLC v. United* States, 68 F.4th 1275, 1283 (Fed. Cir. 2023). A patent ambiguity is obvious on the face of the contract such that it would "place a reasonable contractor on notice and prompt the contractor to rectify the inconsistency by inquiring of the appropriate parties." *K-Con, Inc. v. Secretary of Army*, 908 F.3d 719, 722 (Fed. Cir. 2018). If the ambiguity is patent, a party must object to the solicitation before the close of the bidding process, or else it "waives its ability to raise the same objection subsequently in a bid protest action." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007). Thus, if a protester complains about a patent ambiguity only after the provision has been applied against the protester in a way the protester does not like, no relief is available.

Unlike a patent ambiguity, a latent ambiguity is "neither glaring nor substantial nor patently obvious." *K-Con, Inc.*, 908 F.3d at 722. A protester may succeed in a protest if such a latent ambiguity is applied against the protester, as it could not be expected to have recognized the ambiguity before submitting its proposal.

### A.    The solicitation requires that mentor-protégé offerors provide two qualifying projects from socioeconomic set-aside businesses

Plaintiffs argue that the solicitation is latently ambiguous and that they reasonably interpreted the solicitation to require, for mentor-protégé joint ventures, only one qualifying project

from a socioeconomic set-aside business—in each of their cases, the protégé. ECF No. 28-1 at 9-22. The government argues that there is no ambiguity, and the solicitation always requires two qualifying projects from socioeconomic set-aside businesses, including from mentor-protégé joint-venture offerors. ECF No. 32 at 21-22. The government adds, in the alternative, that, even if there were an ambiguity, it is patent, so plaintiffs would have had to protest the solicitation pre-award. *Id.* at 23.

The government is correct that the plain meaning of the solicitation requires all offerors in socioeconomic set-aside categories, including mentor-protégé joint-venture offerors, to provide two qualifying projects from socioeconomic set-aside businesses. The instructions applicable to all socioeconomic set-aside offerors require each offeror to submit two qualifying projects from socioeconomic set-aside businesses, such as 8(a) small businesses for the 8(a) set-aside. AR2517-18.

Plaintiffs are correct that the instructions specific to mentor-protégé joint ventures require one qualifying project from the protégé or the joint venture itself—which qualifies as a socioeconomic set-aside business. But those instructions also note that offerors must adhere to all the solicitation's requirements, not just those listed under the mentor-protégé section. The solicitation states, for a mentor-protégé joint venture, that the offeror should "submit elements identified in Section L.5 in accordance with other sections of this solicitation and," among other things, one qualifying project from the protégé or the joint venture itself. AR2501 (emphasis in original). The agency underlined the word "and" to emphasize that offerors needed to comply with both sets of requirements. *Id.* Section M separately reinforces that materials must be "complete in accordance with Section L.5.2," which includes the section (L.5.2.2) containing the requirement of two set-aside qualifying projects. AR2548.

Reading sections L.5.2.2 (broadly applicable) and L.5.1.3.1 (applicable only to joint ventures) together, the solicitation requires, for mentor-protégé joint ventures, (1) that two qualifying projects must be from the socioeconomic set-aside category, and (2) that only one of those two qualifying-project submissions must be from the protégé or joint venture itself. The other could be from the protégé, from the joint venture, from the mentor, if the mentor is also a socioeconomic set-aside business, or from a subcontractor that meets the set-aside criteria. AR2501-03.

Plaintiffs interpret section L.5.2.2 as a general requirement that is inapplicable to mentor-protégé joint ventures and argue that, for mentor-protégé joint ventures, section L.5.1.3.1 supersedes the more general requirement. ECF No. 28-1 at 12-13, 16. That interpretation ignores the plain language of the solicitation, which requires that proposals comply with both sets of requirements. Because the solicitation states that a joint venture must follow the specific requirements for joint ventures "<u>and</u>" the more general requirements of other sections of L.5 (AR2501), and there is a reading that allows a joint venture to follow both sets of instructions, that is the better reading of the solicitation. And, in fact, after receiving a rejection, CWS FMTI's president acknowledged that, "[u]pon closer review of Section L.5.2.2, we recognize that we misinterpreted the requirement." AR15826.

Plaintiffs argue that section L.5.2.2 renders section L.5.1.3.1 superfluous, so a reading that requires following both sections cannot be the correct reading. ECF No. 28-1 at 12, 18. But neither section renders the other superfluous. One section generally requires a proposal to include two socioeconomic set-aside qualifying projects. The other requires that one qualifying project be from the protégé. As already discussed, while the second set-aside qualifying project *can* be from the protégé, it can also be from the mentor, from the joint venture itself, or from a subcontractor.

9

Neither section undermines the requirements of the other. That is also why neither requirement makes the other surplusage (*see* ECF No. 28-1 at 12-13).

GSA received questions about the qualifying-project requirements for mentor-protégé joint ventures and posted its answers during the bidding process. *See, e.g.*, AR7282; AR7313-14. Plaintiffs argue that GSA's answers in relation to sections L.5.1.3.1 and L.5.2.2 did not clarify the qualifying-project requirement. ECF No. 28-1 at 22. But the questions and answers show GSA's consistent interpretation, in line with the plain language of the solicitation, that every offeror competing for a socioeconomic set-aside needed to provide two qualifying projects from set-aside businesses. *See* AR7282; AR7313-14. For example, when asked whether a mentor-protégé joint venture would need to submit two qualifying projects from an 8(a) member to satisfy both sections L.5.1.3.1 and L.5.2.2, GSA answered "[c]orrect," before saying more. AR7313.[5] Although GSA's answers "largely repeated the requirements" stated in the solicitation (ECF No. 28-1 at 22), those answers did not create an ambiguity where the solicitation contained none. And, as further discussed below, even if GSA's answers had created an ambiguity, plaintiffs could have and should have raised concerns about the solicitation during rather than after bidding. *See York Telecom Corporation v. United States*, 130 Fed. Cl. 186, 201 (2017), *aff'd*, 708 F. App'x 682 (Fed. Cir.

---

[5] At the oral argument, plaintiffs noted a new possibility that that particular question might have implied that three qualifying projects were required from an 8(a) business. *See* AR7313 (question 56 starting by asking whether a bidder needed to supply "1 [qualifying project] from the Protégé and 2 from 8(a) similarly situated team members or the [joint venture] itself"). But the ultimate question assumed that only one or two qualifying projects would be required from an 8(a) business and requested clarification between one or two, not three. *Id.* (clarifying the question by saying, "Meaning that 2 [qualifying projects] from 8(a) members are required, not just 1 [qualifying project] from the 8(a) Protégé due to the handling for [mentor-protégé joint ventures]?"). Thus, no one—not the prospective offeror or the government—thought there needed to be three qualifying projects from 8(a) businesses.

2018) (explaining that agency answers that create a patent ambiguity still require a pre-award protest).

Plaintiffs further argue that the government's interpretation undermines the solicitation's policy goal of helping protégés develop because it puts more onerous requirements on mentor-protégé joint ventures than on individual offerors. ECF No. 33 at 13. Section L.5.1.3.1 ensures that at least one of an offeror's qualifying projects is attributable to the protégé or joint venture itself. That requirement ensures that the protégé will contribute meaningfully to the work of the joint venture. *See* 13 C.F.R. § 125.8(c), (e) (requiring the evaluation of "work done and qualifications held individually by each partner to the joint venture" and requiring a certain level of work performed by the protégé be more than administrative "so that it gains substantive experience"); *HealthRev, LLC v. United States*, 172 Fed. Cl. 73, 84 (2024) (noting that a protégé must "bring something to the table other than its size or socio-economic status"). Section L.5.2.2 serves the distinct purpose of protecting the integrity of the socioeconomic categories. That section applies to all socioeconomic set-aside proposals, not just those from mentor-protégé joint ventures, and promotes the participation of socioeconomic set-aside businesses in the performance of the contract, regardless of whether those businesses are protégés or not. Thus, each provision advances a different goal, and it is not unreasonable for the government to work to advance both goals.

Finally, plaintiffs argue that the solicitation violates an SBA regulation for assessment of mentor-protégé proposals. The regulation plaintiffs rely on, 13 C.F.R. § 125.8(e)(1), states that a solicitation "shall not require [a protégé] to individually meet all the same evaluation or responsibility criteria as that required of other offerors generally." Plaintiffs argue that GSA's interpretation of the solicitation at issue here requires protégés to meet the same criteria or even higher criteria than other offerors. ECF No. 28-1 at 18 n.1. But GSA included distinct evaluation criteria

11

for protégé qualifying projects. Under the OASIS+ solicitation, protégé projects may take advantage of a value and scale threshold that is half the usual requirement. *See, e.g.*, AR2514. Because there is not a higher standard set for protégé qualifying projects, the solicitation does not violate 13 C.F.R. § 125.8(e).

**B.    If there were an ambiguity in the solicitation, it is patent rather than latent, and plaintiffs should have protested pre-award**

Plaintiffs argue that their interpretation of the solicitation reveals a latent ambiguity. ECF No. 28-1 at 17. Plaintiffs read the solicitation as including a general rule for the wider applicant pool (section L.5.2.2) and a different, more specific, rule that supersedes the general rule and applies only to mentor-protégé joint ventures (section L.5.1.3.1). ECF No. 28-1 at 17. Plaintiffs argue that their interpretation is reasonable. Plaintiffs argue that, because there were multiple reasonable interpretations, and the ambiguity was not evident until after the award decision, the solicitation contained a latent ambiguity that did not need to be protested pre-award.

Although the court has already determined that the solicitation was unambiguous, in the alternative, any ambiguity in the solicitation was patent rather than latent and could have been protested pre-award. *See Blue & Gold Fleet,* 492 F.3d at 1313. Two prospective offerors asked questions related to the qualifying-project requirement for mentor-protégé joint ventures, specifically seeking to clarify whether they needed one or two qualifying projects from socioeconomic set-aside businesses. *See* AR7282 (question 122, asking for confirmation as to whether one or two qualifying projects were required from the protégé for SBA mentor-protégé offerors); AR7313 (question 56, asking whether one or two qualifying projects from 8(a) businesses were required). The arguable ambiguity was evident to those prospective offerors and was therefore patent. *See Community Heating & Plumbing Corporation v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993*)*

(noting that a party had inquired about a contract's terms, making any ambiguity patent). That is true even if GSA's answers did nothing to clarify. *Id.* at 1580.

Plaintiffs point out that many other mentor-protégé joint ventures were disqualified for the same reason as plaintiffs. *See* ECF No. 28-1 at 18-19 (listing the number of proposals rejected under section L.5.2.2 for each socioeconomic set-aside category, adding up to 73 rejected proposals out of a total of 365 proposals). Although others shared plaintiffs' interpretation, a common misunderstanding does not necessarily render any ambiguity latent, particularly where prospective offerors asked ahead of time about the language at issue. Plaintiffs rely on *Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 517 (2018), to argue that an agency should reopen discussions after clarifying the solicitation's requirements when there is a common mistake. ECF No. 28-1 at 20. But in *Ernst & Young*, "every offeror, except [the awardee], made identical" mistakes. Because of that, and because the problem became apparent early in the solicitation process, the court explained that "discussions would have benefitted" the agency. *Id*. Here, GSA rejected only a minority of proposals for making the same mistake that plaintiffs made. ECF No. 28-1 at 18-19; *see also* ECF No. 31 at 1-2 (listing successful mentor-protégé joint venture proposals by socioeconomic set-aside category). That situation does not require GSA to reopen discussions, and to the extent that there was any ambiguity in the solicitation about numbers of socioeconomic set-aside qualifying projects, the ambiguity was patent, requiring prospective offerors to protest pre-award.

## C.    There was no need for GSA to refer plaintiffs to SBA for a certificate of competency

Plaintiffs argue that, regardless of the solicitation's meaning, GSA erred when it did not refer them to the SBA for a certificate of competency after determining that they were ineligible for awards. ECF No. 28-1 at 23-5. Under the Small Business Act, the SBA has the power to certify a small business's responsibility in certain circumstances where the business has been found not

responsible by a contracting agency's contracting officer. *See* 15 U.S.C. § 637(b)(7)(A). A procurement officer cannot exclude an offeror from competition as not responsible "without referring the matter for a final disposition to the" SBA. *Id.* Thus, plaintiffs argue that, before they could be disqualified, the matter had to be decided by the SBA.

Responsibility is different from responsiveness to a solicitation. Responsiveness is about the contents of the proposal when received, while responsibility is about an offeror's ability to perform. *See DynCorp International LLC v. United States*, 76 Fed. Cl. 528, 547 (2007) (discussing the difference between responsibility and responsiveness in the bid-protest context).

GSA's decision to disqualify plaintiffs from competition implicates not responsibility but plaintiffs' responsiveness to the OASIS+ solicitation. Both plaintiffs failed to "submit a minimum of two Qualifying Projects" from socioeconomic set-aside businesses. *E.g.*, AR15325 (CWS FMTI's unsuccessful offeror notification); AR15848-50 (Mainsail-Oasis's unsuccessful offeror notification). "[W]hen an agency cannot evaluate information because the offeror fails to provide it, the agency does not reach the question of responsibility, and thus is not required to refer the matter to the SBA." *Manus Medical, LLC v. United States*, 115 Fed. Cl. 187, 194 (2014). Because plaintiffs here did not meet the solicitation's requirements, referral to the SBA for a certificate of competency is not appropriate.

### D.      Plaintiffs are not entitled to a permanent injunction

GSA correctly interpreted the solicitation, and a referral to the SBA was not required. Plaintiffs therefore are not eligible for injunctive relief. *See PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004) (noting that a plaintiff "must" succeed on the merits of the case in order to qualify for injunctive relief).

III.    **Conclusion**

For the reasons stated above, this court **grants** the government's cross-motion for judgment on the administrative record (ECF No. 32). The court **denies** plaintiffs' motion for judgment on the administrative record and a permanent injunction (ECF No. 28). This is a final, appealable order. The clerk of the court shall enter judgment accordingly.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge

15